UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RICHARD SHARIF, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:05-CV-01367-B |
| | § | |
| WELLNESS INTERNATIONAL | § | |
| NETWORK, LTD a/k/a WIN; et al., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM ORDER

Before the Court is Defendants' Amended Emergency Application for Turnover Order and Brief in Support (doc. 121). After reviewing the Application, Plaintiff's Response, all documents submitted by the parties, and the relevant statutory and case authority, the Court **DENIES** Defendant's Application for a Turnover Order.

## Background

Sharif is a judgment debtor based on the July 22, 2008 judgment of this Court awarding Defendants $655,596.13 in attorney fees. Defendants seek the turnover of funds posted by Sharif as a cash bond in another case pending before the United States District Court for the Northern District of Illinois. Defendants filed this Motion pursuant to Federal Rule of Civil Procedure 69(a) and Chapter 31 of the Texas Civil Practice and Remedies Code.

## Applicable Law

Under Rule 69 of the Federal Rules of Civil Procedure, supplementary proceedings to assist in the execution of judgment are conducted "in accordance with the practice and procedure of the

state in which the district court is held...." FED. R. CIV. P. 69 (a). The Texas Practice & Remedies Code § 31.002 ("Turnover Statute") sets forth the practices and procedures to be followed in Texas during supplementary proceedings to aid in the execution of a final judgment in this matter. The Texas Turnover Statute provides, in pertinent part:

> (a) A judgment creditor is entitled to aid from a court of appropriate jurisdiction through injunction or other means in order to reach property to obtain satisfaction on the judgment if the judgment debtor owns property, including present or future rights to property, that:
>
>> (1) cannot readily be attached or levied on by ordinary legal process; and
>>
>> (2) is not exempt from attachment, execution, or seizure for the satisfaction of liabilities.
>
> (b) The court may:
>
>> (1) order the judgment debtor to turn over nonexempt property that is in the debtor's possession or is subject to the debtor's control, together with all documents or records related to the property, to a designated sheriff or constable for execution....
>
> ...
>
> (c) The court may enforce the order by contempt proceedings or by other appropriate means in the event of refusal or disobedience.
> ...
>
> (h) A court may enter or enforce an order under this section that requires the turnover of nonexempt property without identifying in the order the specific property subject to turnover.

TEX. CIV. PRAC. & REM. CODE ANN. § 31.002 (Vernon 2008).

The Texas Turnover Statute, is "the procedural device by which judgment creditors may

reach assets of a debtor that are otherwise difficult to attach or levy by ordinary legal process." *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 224 (Tex. 1991). "The purpose of the turnover proceeding is merely to ascertain whether or not an asset is in the possession of the judgment debtor or is subject to the debtor's control." *Id.* at 227; *World Fuel Svcs. Corp. v. Moorehead*, 229 F. Supp.2d 584, 587–88 (N.D. Tex. 2002). Once a judgment creditor traces assets to a judgment debtor, a presumption arises that the judgment debtor possesses the assets subject to turnover and the burden shifts to the judgment debtor to account for the assets. *Beaumont Bank, N.A.*, 806 S.W.2d at 226; *Dale v. Finance America Corp.*, 929 S.W.2d 495, 499 (Tex. App.–Fort Worth 1996, writ denied).

"The turnover statute allows the court to reach the assets owned and subject to the control of a judgment debtor, even if those assets are in the hands of a third party." *Resolution Trust Corp. ("R.T.C.") v. Smith,* 53 F. 3d 72, 78 (5th Cir. 1995)(*citing Norsul Oil & Mining v. Commercial Equip. Leasing Co.*, 703 S.W.2d 345, 349 (Tex. App.–San Antonio 1985, no writ)). Because the statute is procedural in nature, however, it does not provide for the determination of the *substantive rights* of the parties involved or third parties. *R.T.C.*, 53 F.3d at 77 (emphasis added) (holding a district court's order in a turnover proceeding voiding a judgment debtor's pledge of stock to a third party was impermissible under the Texas turnover statute). Consequently, a Court is not authorized to recommend the entry of an order in the course of a turnover proceedings that would affect the rights of third parties under a pledge agreement with a judgment debtor. *Id.* at 80.

The turnover statute provides little guidance regarding what property may "readily be attached or levied on by ordinary legal process." *World Fuel Svcs. Corp.*, 229 F. Supp.2d at 586; Tex. Civ. Prac. & Rem. Code Ann. § 31.002(a)(1). However, "[a]ccording to the Texas House and Senate Committee Reports, the statute was enacted to provide judgment creditors with a remedy to

reach a judgment debtor's nonexempt property in cases where traditional methods had proved to be inadequate, including: where the debtor has property outside the state of Texas[.]" *World Fuel Svcs. Corp.*, 229 F. Supp.2d at 586. "Texas courts, moreover, have applied the turnover statute to reach a wide variety of property, including, corporate stock in the hands of third parties and held out of state, shares of stock and accounts receivable, and promissory notes." *Id.* at 587 (internal citations omitted).

A judgment creditor is not required to demonstrate that other methods of collecting the judgment against the judgment debtor had failed before using the Texas turnover statute to collect on a judgment. *R.T.C.*, 53 F. 3d at 78; *see also World Fuel Svcs. Corp.*, 229 F.Supp.2d at 587. The Turnover Statute only requires that non-exempt property cannot be readily attached and "[n]either the statute nor the case law provides a corresponding requirement that the judgment creditor demonstrate that other methods of collecting the judgment have failed." *R.T.C.*, 53 F.3d at 78 (citing *Hennigan v. Hennigan*, 666 S.W.2d 322, 323 (Tex. App.–Houston [14th Dist.] 1984, writ ref'd n.r.e.) (rejecting the argument that the former version of the turnover statute requires a judgment creditor to "'first exhaust his legal remedies of attachment, execution, garnishment, etc., prior to seeking relief.'")).

The Turnover Statute also provides that "[a] court may not enter or enforce an order under [the turnover statute] that requires the turnover of proceeds of, or the disbursement of, property exempt under any statute...." TEX. CIV. PRAC. & REM. CODE ANN. § 31.002(f). However, if a debtor claims that an asset is exempt, it is the debtor's burden to prove any exemption. *Dale*, 929 S.W.2d at 498–99 (finding that once judgment creditors traced assets to the judgment debtor, judgment debtor had the burden to demonstrate any "entitlement to an exemption.").

## Analysis

Defendants seek the transfer of the proceeds from a $120,000 check that was returned to Sharif by the United States District Court for the Northern District of Illinois after Sharif had posted a cash bond required to allow him to travel out of the country. At the hearing in which the cash bond was ordered, Sharif stated to the Illinois court that he could post a cash bond in the amount of $120,000 within one hour. Defendants argue that this assertion indicates the funds were subject to Sharif's control at that time. *See World Fuel Svcs. Corp.*, 229 F. Supp.2d at 588. Defendant points out that in Sharif's own Motion to Exonerate, the $120,000 cash bond is identified as Sharif's and directs the district clerk to issue the check returning the bond to Sharif, and no one else. Upon return of the cash bond, the Illinois court made the check out to Richard Sharif alone.

In his response to the application for turnover order, Sharif argues the funds used to post the bond were not owned by him and are not subject to being seized for payment of the judgment against him. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 31.002(a). Attached to his response to the application for turnover order, Sharif presents affidavits from himself and two sisters, unsupported by any documentary evidence, stating that the funds were corporate funds that Sharif's sisters allowed him to use for the cash bond. The Court finds these self-serving affidavits, standing alone, with no documentary evidence to support the claims that the funds originated from the corporate entities, to be of little weight. Further, the Court notes that Sharif requested that the check returning the cash bond be made out to him, not to the corporate entities he now argues own the funds.

However, upon a deeper examination of the transcript of the hearing at which Sharif posted the cash bond, the Court finds strong indications that the funds may belong to Sharif's sister, Ms.

Sharifeh. In discussions regarding the arrangements for the bond, Ms. Murphy, the attorney appearing on behalf of the United States, commented on the record in the presence of Sharif's counsel, "It looks like Ms. Sharifeh is giving her brother the money[.]" The Court commented in regard to a cashier's check made out to the Court, "it's going to be a second party, so she has to make it out to him, and then he turns it over to the Court." Further discussions on the records indicate the money for the bond may have come from Sharif's sister, not Sharif. Therefore, there is a dispute about the ownership of the assets posted for the bond. The Court finds that Defendant has failed to demonstrate that Sharif owned the funds used to post his cash bond. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 31.002(a); *R.T.C.*, 53 F.3d at 78. With this element in doubt, the Court cannot issue a turnover order. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 31.002; *Beaumont Bank, N.A.*, 806 S.W.2d at 226.

## Conclusion

Accordingly, the Court **DENIES** Defendants' Amended Emergency Application for Turnover Order (doc. 121).

**SO ORDERED.**

**SIGNED December 12, 2008**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE